Case number 24-1134-NLRB. District Hospital Partners, L.P. doing business as George Washington University Hospital Illuminated Partnership and UHS of D.C. Inc. General Partner Petitioners v. National Labor Relations Board. Mr. Lominec for the petitioners, Ms. Isbell for the respondent, Mr. Weisinger for the interviewer. Good morning, counsel. Mr. Lominec, please proceed when you're ready. Thank you. May it please the court. The board sat in judgment on the substantive terms of the hospital's bargaining proposals, and its views on those terms clouded its judgment of the hospital's good faith. Section 8D of the NLRA is clear. Parties must bargain in good faith, but they are not compelled to reach agreement or make concessions. Thus, the Supreme Court has held that Section 8D prevents the board from controlling the settling of the terms of a CBA in order to effectuate Congress's intent that the parties have wide latitude in their negotiations. This court has added a warning to the board that an inference of bad faith from the substantive terms of a proposal must always be drawn with caution. In DHP 1, the board respected those boundaries and faithfully applied Supreme Court and this court's and board precedent. But in DHP 3, the case before your honors, a newly constituted board led by the dissenting member from DHP 1 through caution to the wind. First, I want to highlight a few inexplicable factual errors committed by the board in its decision, and those errors clouded the board's judgment. First, the board expressly found that the hospital proposed to eliminate dues check-off during bargaining. It did not. The hospital merely proposed to modify dues check-off to eliminate automatic contributions to a PAC fund. What the hospital proposed was to eliminate union security language from the prior contract, and after finally receiving some counter response from the union on that issue, began to discuss the reasons for not wanting that language. It was never demanded as a final proposal. Regarding management rights. Did you ever really move off of the four proposals, the three core proposals in this case? With respect to no strikes, your honor, the hospital... Extended management rights or the discretionary wages. Yes, your honor. The hospital did move in many respects in each of those proposals. The no strikes... It seemed like that went on for a period of close to 18 months. 14 months was the period during which a no strike clause was proposed along with grievance and mediation, and as well as the management rights proposal. As the record reflects, the parties made considerable progress with respect to management rights, including George Washington University Hospital withdrawing some of the prior proposals. The no strike proposal itself was withdrawn, and the board wants to make a lot of the fact that had been filed prior to that. The difference, however, is that that was not the end all be all when that no strikes clause was withdrawn. Bargaining continued for several more months. The purpose of finding no strike clause insistence, along with no arbitration, along with broad management as a bad faith bargaining tactic, is that it stalls negotiations. So, the fact that the hospital withdrew that proposal goes directly towards that issue of good faith bargaining. We are trying to get to an agreement here. Regarding management rights, the board, in another glaring error, chastised the hospital for specifically proposing language stating that the hospital would receive constructive criticism from the union at its sole discretion, and the board said, well, that's hardly a bargaining proposal at all. The board overlooked the fact that it was the union that actually proposed that language. The union proposed that language, and it was in the prior CBA. Was the sequence that when the union responded on management rights, then the next day was when the hospital put into the proposal the grievance and mediation and the no strike provision? The grievance and mediation and no strike provisions came in March. The management rights provision was initially proposed in December of the prior year, so December of 2016, and then the management rights proposal, excuse me, and then the grievance and mediation proposal and no strike proposals were offered and discussed. Right, but were they offered and discussed? I thought the record says that it was the day after the union counter-proposed on management rights, but am I missing the time? It was around the same time. The parties were making progress on management rights. Yes, you're right. It was right around that time, if it was not the next day. It was not the next day? If it was not. I don't recall specifically whether it was the next day, but it was around that same time period. Okay, but I thought what happened was there's a management rights proposal on the table, the union responds, joins issue on management rights and gives a response, and then the next day the employer comes back with mediation and no strike. That was not a specific response to management rights. The parties were moving along with management rights, and the hospital was making concessions with respect to management rights, and then the no strikes clause and the grievance and mediation proposal were made. The next day? Yes, or I believe it was the next day. It was right around there, but they were not, it was not specifically linked to those. One of the inconvenient facts that the board overlooked with respect to the management rights clause is that, again, the union accepted most of the provisions of that clause, and while the board does take issue with the expansiveness of the management rights clause, that's exactly what a management rights clause does. It gives the hospital broad discretion to act. It waives the union's right. It waives employees' rights in certain respects. Now, the board can't seriously attack the no strikes and no lockouts clause. That is a standard contract provision. The board's major issue with that clause is that it accompanied a provision that removed arbitration. The board was wrong to conclude that the lack of arbitration rendered the hospital's proposals unlawful. Arbitration is not always the quid pro quo for no strikes, and the Supreme Court has held as much. Think about this. Without arbitration and assuming that mediation is unsuccessful, employees or the union could file unfair labor practice charges with the National Labor Relations Board claiming violations or breach of the contract. When arbitration is part of a collective bargaining agreement, the board typically defers its decision on that issue to arbitration, but when there's no arbitration, the board will rule on it. Section 301 permits parties to file breach of contract claims in court. Complaints with administrative agencies, the EEOC, the DOL, all of those could be filed. The board ignored that. The board also ignored the fact that the parties throughout their period had had one arbitration. The hospital lost that arbitration and was not happy with that result. Arbitrators are unpredictable. Mediation is a well-proven method of dispute resolution. The hospital was willing to accept the risks of court and administrative agency litigation at the expense of arbitration. This case is nothing like the cases that the board cites and relies on. Now, let's move on to your withdrawal recognition. Did there seem to be any dissatisfaction before that time? There is record evidence of apparent dissatisfaction. The union has tied and the board is tied to it not reaching a point of majority status, majority wanting to withdraw until the wage issue. Because what I'm saying in this case would be that temporal proximity with respect to when you actually withdrew and then with respect to that October 12th bargaining brief. The bargaining brief? Yes. And your question is whether or not there's... In other words, you have the bargaining brief and then you've got the petition and then the withdrawal shortly thereafter. So I'm trying to get a sense of was there dissatisfaction by the employees well before that such that there couldn't be that temporal proximity. There was dissatisfaction leading up to it because the petition was signed by employees leading up to it. However, of course, after the period, the October time period when the bargaining was taking place and then that brief was issued, the ultimate numbers on that petition for... But 50 or so members signed the petition in that two-week period. So I'm trying to get a sense of why just during that time period as opposed to well before. Well, I think, Your Honor, we can only speculate about that. There's no allegation and there's no finding of any unlawful conduct with respect to the petition other than the pure lack of a bargaining relationship from the employer's perspective. In other words, it wasn't challenged that the hospital solicited the decertification or had any fingerprints on that, if you will. And in fact, that distinguishes this case from some of the other cases in which that was part of the challenge. But here, there's no issue with respect to the legitimacy of the withdrawal of recognition provided, of course, that the hospital prevails in its position that it had no bargaining obligation. But you are tied to a misrepresentation in that essentially challenging the employees that they wouldn't get raises or that the union was not effectively bargaining on their behalf and that that was attached to the withdrawal. No, Your Honor. The DHP board, the third iteration of this case that's before you, the majority did not consider those bargaining briefs. It was never alleged or found to be rather unlawful to provide those briefs. And if you refer back to DHP one, majority's decision in a footnote explains why that can't be considered or found to be evidence of unlawful intent or unlawful action. But did you do any attempt to clarify that messaging, I guess, then? Clarify the messaging that... That you're attached to essentially that alleged unlawful comment, that whole taint with respect to that's the reason for the withdrawal, that you all are part of why these employees were signing the petition in belief that the union was responsible for them not being able to get raises. Well, again, that was not found to be unlawful. But as far as the statements themselves, that's certainly protected by the First Amendment, Section 8C of the Act, which codifies the First Amendment protections to explain that. And that's part of the give and take of bargaining, right, and how that process works itself out. The union at any point could have called a strike. And I think that's what the board really misses here. Those economic forces could have been at play by the union. Instead, they decided to go to the board and gamble with board litigation to challenge the employer's conduct rather than substantively engage. And once meeting a point where they no longer wanted to do that from the union's perspective, call a strike. They never did that. Can I ask you that there's two legal propositions that kind of frame the board's analysis. And I just want to make sure. Yes. I don't think you disagree with either of the legal propositions. I think what you may disagree with is whether the standards are met here. But I just want to make sure you don't disagree with either. The first one is it must be decided whether the employer is engaged in hard but lawful bargaining to achieve a contract that it considers desirable or is unlawfully endeavoring to frustrate the possibility of arriving at any agreement. That's one. And the second one is an inference of bad faith bargaining is appropriate when the employer's proposition proposals are taken as a whole would leave the union and employees. It represents substantially fewer rights and less protection than provided by law without a contract. Those are the two sort of propositions that frame what the board did. You don't disagree with either of those as stated. I do not agree with those. I disagree. You don't disagree. Correct. I'm sorry. I do not disagree with those. I do disagree with the board's recitation of that after citing that case law. The board then conveniently leaves out in its decision substantially fewer rights. And it goes it goes to say if it would leave the board if it would leave the employees with fewer rights. This is not one of those cases as we've talked about as I've talked about through the briefs and here today. This is not one of those cases where employees were deprived of anything other than what the hospital was proposing. This was not a last best and final offer. This was not a take it or leave it approach. Even without the union or without a contract, employees would not have had progressive discipline. They wouldn't have had seniority layoff. They wouldn't have had time off for a union business. They wouldn't have had attendance guidelines. They wouldn't have had contractual wages and benefits. All of those things exist. The board engages in hyperbole. They overstate the issues. They overstate and dramatize the impact of all of this. At the end of the day, your honors, the law does not provide for a deal by a union. The law does not guarantee better rights, better benefits, better wages with unionization. The law requires good faith bargaining and that is what the hospital did here. We would respectfully ask the court to grant the petition for review and deny the board's cross-application for enforcement. Thank you. Thank you, counsel. The board now, Ms. Isbell. May it please the court, five minutes of my time has been reserved for intravenous union counsel. Good faith bargaining doesn't require that the parties reach an agreement. It just requires that they come to the table with an open mind and an intent to reach an agreement. And what the board found here was that the hospital's proposals taken as a whole would have given the union and the employees substantially fewer rights than they would have had without a contract. The broad management rights clause, the no strike clause, and the insisted upon for 14 months show that the hospital did not truly intend to reach an agreement. The board does look at proposals, not to decide whether those proposals are good or bad in and of themselves, but to decide whether or not they show an intent to reach or an intent to frustrate agreement. What's in the individual proposals is less important than their combination and how they work as a whole to minimize the union and the employee's rights. So is it true that some of the same management rights were included in the expired contract and the new management rights contract or management rights proposal? Yes, of course. But this management rights proposal went further. It allowed the hospital to subcontract all bargaining unit work. It allowed them to have supervisors do all bargaining unit work. It allowed them to change any rule, policy, or procedure without consulting the union. That's the kind of thing a union would have the right to be consulted about without a contract. You couldn't change a work rule without going to the union and discussing it with them first, or at least giving them the opportunity notice and opportunity to bargain. The no-strike clause. I'm just asking, so on that one alone, on the management rights alone, so if an employer, if that was their be-all end-all, and they really cared about management rights, and then just their take out of the field of vision no strikes or a mediation arbitration, and suppose the employer doesn't care about those, but they really just want broad management rights that are, as you might say, they don't get you any better off than if you didn't have a contract. If that alone was just insisted upon and to the ends of the earth in the course of a negotiation, would that alone indicate bad faith bargaining? I don't think so. Let me talk this out with you. If the union has the right to strike, then they have the right to enforce the parts of the agreement that are contained in the agreement. Whether that's wages or progressive discipline, they have the right to go to an arbitrator to enforce or to find out whether or not a discharge is for cause. For cause discharge was taken out of these proposals. That was one of the things the union insisted on. So with just a broad management rights, everything else the union wanted, I don't think we would be here. The one of the issues in deciding whether or not these are bad faith proposals is, what was the union getting out of it? You can ask for the moon, but in the end to get to an agreement, the union needs to, there needs to be a sweetener in there for the union. And sometimes that's not a no strike clause. Sometimes it's arbitration. Sometimes it's higher wages, but there has to be a back and forth. And here there is not that back and forth. Did they negotiate? They did on things like job postings, vacancies, the union bulletin boards. They discussed that stuff for months. But the big issues, they held strong. The union really wanted for cause discharge. It had been in the old contract. The hospital refused to do it. And you'll notice in their reply brief, they talk about the fact that it was okay because an arbitrator would have read it into the contract anyway, except that under their proposals, there would be no arbitration. It would never go to an arbitrator. And the bargaining notes of this bargaining would show very clearly that they had bargained that away very specifically. The hospital was not going to agree to it. And if just cause discipline was not important and could have just been inferred into the contract, then they could have given it to the union. The union was very clear that they wanted that one bit in the management rights clause and in the disciplinary clause. And they said no. Those things show that this was not an intent to reach agreement. It was an intent to frustrate agreement. Bargaining on the prior contract took a week. This took 30 sessions over almost two years. They reached a handful of tentative agreements on, let's just say, maybe not minor, but the less important issues. Not wages, not discipline, not management rights. The preamble they reached a tentative agreement on. Job postings. But didn't the union table wage demands for a significant period of time as well? The union, if you read the bargaining notes, the union begged to discuss wages from the beginning. The company would not discuss it. The union finally put, I think in April of 2017, finally put a wage proposal on the table. It was not until May of 2018 that the hospital countered that wage proposal. When it countered that wage proposal, it came up with a two part system. One was these wage range charts. You can see them in the record. And one was a merit based, not a bonus, but merit based raises. Neither one would negotiate. They were very clear. They would not negotiate the wage ranges and they would not negotiate the merit proposals. Performance evaluations, which would be the basis of your merit raise, were taken out of the grievance non-binding mediation clause. You couldn't grieve it and you couldn't take it to even non-binding mediation. So they wanted no union role in wages whatsoever. But on the issue of timing, it was the union begging to discuss it. One last thing I would just like to say, there does not have to be a last best and final offer. When we're talking about surface bargaining, what we're talking about as the circuit memorably called it, shadow boxing to a draw. Nobody has to say the words last best and final. It doesn't have to be take it or leave it. It just has to be where the record as a whole shows an intent to frustrate rather than reach agreement. If there are no further questions. Thank you, Castle. Thank you. We're from the intervener now, Mr. Wissinger. Good morning. May it please the court. Michael Wissinger on behalf of the intervener 1199 SEIU. I would like to go straight to the question your honor was asking of my colleague of the combined effect of these proposals, which taken as a whole would leave the union and the workers with substantially fewer rights than if they didn't have a contract. Really two parts to this equation from our perspective. First, as counsel for the board briefly explained, as long as there was no contract in place, the parties were bargaining, the existing conditions helped. Those existing conditions apart from a wage increase were substantially better than what the employer was proposing. Second, if the union had agreed to what the employer was proposing, it would have shackled its members with a contract that was meaningless for them as individuals. Proposals such as these strip the union of a way to represent their members on the decisions that are important to them. Workers want a few things in a contract. They want to see written down what are their wages going to be, what are their benefits going to be, they want some job security, they want a voice in the workplace, and they want a way to redress most often an unjust discipline, a way to enforce the contract. As counsel for the board and the record reflects, the proposals here provided none of that to these workers. The management rights clause, employer retained all the control, right? All control over wages, benefits, the work itself, and the elimination of the just cause protection. These are the things that the workers care about and what a union obtains for them in a contract. And even as to the supposed advantages that GW is touting in the items that it lists that it was willing to give, those were unenforceable, right? They admit that the only way to enforce those would be in federal court and limited to what was essentially a discharge arbitration. How hollow that sounds to a hospital cook, hospital cleaner. Everything that you might get from us, it's unenforceable. No arbitration, no right to protest. In this very measured setting, in this beautiful courtroom, I'm charged by my client with explaining to you just how troublesome these proposals were. So outside the bounds of normal behavior, the union was in disbelief. After 20 years, they sat down and the employer said, we need to rewrite this entire contract. The union knew it was in for the long haul, but it did not know just how far the employer was willing to go to break the union and break the law in the process. The union continued to hold out hope. And if you read the record, you see the union is making counters. The union is compromising. The union, if we could just tweak this, maybe we can get a contract. And you asked specifically about the management rights clause. The union agreed to most of that right away, but it was the rest of what came right after that agreement. The union could never agree to, and management knew that. They say they were testing their leverage, but they never moved on the important conditions of employment that the workers were holding the union accountable for. By the last session, five agreements after two years of bargaining on things that were pretty unconsequential to the workers. Meanwhile, substantial issues for 14 months go unchanged. The employer engaged in the choreography of bargaining, but they never really bargained. And they knew that if they could wait out the clock, the union, no self-respecting union, could agree to what they were asking. And the workers would start to get frustrated, and they did. Your Honor asked questions about that timing, and that's absolutely correct. These workers were told, your union is preventing you from getting a wage increase. And they turned. And here we are. GW forced the union to spend two years bargaining nonstop over peripheral issues and held to a core unlawful proposals for 14 months. That is unacceptable. It's unlawful. It's bad faith bargaining. We ask the court to enforce the board's order in full. Thank you. Thank you, counsel. Mr. Wominek, we'll give you two minutes for rebuttal. Briefly, your honors, the right to union representation does not imply a right to a better deal. The board forgets this. The board focuses so heavily on the substance of the terms, the merits of those terms, whether they were fair, whether employees would have agreed with that, whether the union would have accepted it, whether we offered a sweetener to the union. This court, the Supreme Court, and other courts have consistently held that the board cannot go that far. The board is obligated to regulate the party's conduct at the table, not cast merit or cast judgment on the merits of the substantive proposals, the misstatements, the inaccuracies, the overgeneralizations by the board, by my friends on the other side are alarming. Wages in particular, the company was not proposing to have all discretion over all wages, and to the extent the company did propose, the hospital did propose to retain discretion to increase wages, the board conveniently forgets that the union readily agreed to that. We have no problem with what you want to pay above the minimums. We just want the minimums established, and that was subject to bargaining, subject to negotiations up and until the hospital received that petition. If the union believed the hospital's proposals were untenable, it could have called a strike. It did not. Instead, it went to the board, and the board misapplied precedent and found the hospital's conduct unlawful. Thank you. Thank you, counsel. Thank you to all counsel. Take this case under submission.
judges: Srinivasan; Henderson; Childs